UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BARRY WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-cv-00070-SEB-TAB |
| | ) |
| BLUE SKY CASINO, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment [Docket No. 35], filed on May 12, 2017, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Barry Wilson ("Mr. Wilson") has brought this action against his employer, Defendant Blue Sky Casino, LLC, d/b/a French Lick Resort and Casino ("French Lick"), alleging that French Lick failed to promote him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"). For the reasons detailed below, we <u>GRANT</u> Defendant's Motion for Summary Judgment.

### Factual Background

**Defendant's Business and Anti-Discrimination Policies**

For many years, French Lick has undertaken historic restoration projects involving various locations, such as the French Lick Springs Hotel in French Lick, Indiana, and West Baden Springs Hotel in West Baden Springs, Indiana, which projects have included fully renovated guest rooms, a new event center, retail, shops, and the French Lick

1

Casino. Tate Decl. ¶ 3. The French Lick Casino opened on November 3, 2006, offering slot machines, table games (blackjack, roulette, craps, and poker), a high limit gaming area, VIP services, live entertainment, and various dining options. *Id.* ¶ 4. As of January 1, 2008, French Lick has been owned by the Blue Sky Trust, a trust organized by CGI Resort Holdings, LLC, a wholly-owned subsidiary of Cook Group, Incorporated. *Id.* ¶ 5.

French Lick maintains policies prohibiting discrimination, harassment, and retaliation, all of which are set forth in French Lick's employee handbook. *Id.* ¶ 6. All employees receive a copy of the handbook when they are hired, including, we assume, Mr. Wilson. Wilson Dep. at 55.

**Plaintiff's Position and the Promotion Process**

Mr. Wilson began his employment with French Lick on November 6, 2006 as a Table Games Floor Supervisor; he still holds this position. *Id.* at 6, 41. French Lick's Table Games Floor Supervisors are supervised by the Table Games Shift Managers. *Id.* at 48. There are currently three managers and four assistant managers in the Table Games Department. Miller Dep. at 9-10. The Table Games Shift Managers report to Mike Miller, the Director of Table Games, who oversees the entire Table Games Department. *Id.* at 9; Wilson Dep. at 46-47. Mr. Miller has worked for French Lick in that capacity since November 2014. Miller Dep. at 9.

In June 2015, approximately seven months after Mr. Miller began working as the Director of Table Games, an opening arose in the department for a Table Games Shift Manager and Mr. Wilson applied for the promotion. Wilson Dep. at 58; Exh. 29 to Wilson Dep. At the time he applied, he was 55 years old. Wilson Dep. at 10, 60.

2

Several other French Lick employees applied as well, including Michael Voegerl (age 55), Mark Stephenson (age 50), Stacey Steele (age 40), Rollie Cannon (age 38), and Tyler Whiting (age 35). *Id.* at 61; Tate Dep. at 19; Miller Dep. at 16-17.

After interviewing each of the candidates, Mr. Miller preferred to promote Mr. Voegerl. Exh. 4 at 15, 19; Tate Dep. at 20-21; Wilson Dep. at 63, 71. At that time, however, Mr. Voegerl was in a romantic relationship with one of the dealers, whom he would have been responsible for supervising as Table Games Shift Manager. Miller Dep. at 19; Tate Dep. at 21; Wilson Dep. at 70. Given this relationship, before officially selecting Mr. Voegerl for the position, Mr. Miller contacted French Lick's Director of Human Resources, Tina Tate, to determine whether he could promote Mr. Voegerl under those circumstances. Tate Dep. at 10-12. Ms. Tate, who at that time was a new French Lick employee, investigated and learned that it was a practice of Cook Group Incorporated, French Lick's parent company, not to allow an employee to supervise a family member or an individual with whom the employee had a romantic relationship. *Id.* at 11.

After consulting with Ms. Tate and learning of this policy, Mr. Miller determined that Mr. Voegerl was disqualified from the supervisory position due to his romantic relationship with the dealer. Miller Dep. at 19-20; Wilson Dep. at 71. Upon further inquiry, Mr. Miller learned that, like Mr. Voegerl, Mr. Wilson also could not be considered for the position because his wife was a dealer and would have been under his supervision if he were promoted, which would violate the anti-nepotism policy. Wilson Dep. at 61, 69. Ms. Steele and Mr. Cannon were also disqualified from the position

3

because their promotions would have resulted in their having to supervise family members as well. Tate Dep. at 25-26. Ultimately, Mr. Whiting, who was the only applicant who did not have a family member or significant other whom he would have been required to supervise as a result of the promotion,[1] was awarded the position. Miller Dep. at 21-22; Tate Dep. at 26; Wilson Dep. at 79; Tate Dep. at 26.

**Defendant's Anti-Nepotism Policy**

Ms. Tate had been hired by French Lick only a few weeks prior to Mr. Miller's inquiry regarding the company's anti-nepotism policy. At that time, she was not aware of a written anti-nepotism policy in place at French Lick, but after contacting French Lick's parent company, she learned that it did in fact have a practice of not allowing family members or those in romantic relationships to supervise one another. Tate Dep. at 10-11.

According to Ms. Tate, she has no knowledge of whether that practice was enforced prior to her hiring, but once she learned of the practice, in June 2015, she immediately began enforcing it from that point forward at French Lick and drafted a written anti-nepotism policy. *Id.* at 12-13; Miller Dep. at 26-27. After the written policy was approved and went into effect in June 2016, Mr. Miller notified Table Games Shift Managers in his department of the policy and posted a written memorandum on bulletin boards in the casino to notify the other employees in the department. Miller Dep. at 11-

---

[1] Although there are no facts in the record to establish whether the final applicant for the promotion, Mr. Stephenson, would have run afoul of the anti-nepotism policy had he received the promotion, Mr. Wilson does not dispute French Lick's assertion that Mr. Whiting was the only applicant who did not have a family member or significant other whom he would have been required to supervise as a result of the promotion. Accordingly, we accept that fact as true for purposes of this motion.

4

13; Tate Dep. at 16-17, 24-25; Exh. 1 to Tate Dep. French Lick imposed an internal deadline of June 1, 2017 by which time all known situations that would violate the anti-nepotism policy were to be corrected, by moving employees to different shifts or different departments to avoid their supervision by a relative or significant other. Tate Dep. at 17-18; Miller Dep. at 11-14.

Mr. Wilson testified that he was aware of at least two instances in which a French Lick employee is currently supervising either a family member or romantic partner, but does not know whether Ms. Tate was aware of those situations. Mr. Wilson also testified that approximately two weeks after he was denied the promotion, he learned that a new dealer had been hired in the Table Games Department who told him that her supervisor was her cousin. He does not know whether Ms. Tate was aware of this situation either. Wilson Dep. at 81-84.

**The Instant Litigation**

In September 2015, Mr. Wilson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and then filed an amended charge on October 6, 2015, alleging that he was denied a promotion due to his age.[2] He subsequently received his notice of right to sue from the EEOC, and, on May 12, 2016,

---

[2] Two other candidates for the promotion, Mr. Voegerl and Ms. Steele, also filed charges of discrimination with the EEOC alleging that French Lick discriminated against them on the basis of their ages when they were denied the promotion. According to Mr. Wilson, Mr. Voegerl did not join the instant litigation because he "inadvertently allowed the statute of limitations to expire." Pl.'s Resp. at 6. Ms. Steele was originally part of this action, but a joint stipulation of dismissal of her claims was filed by the parties on March 30, 2017. Dkt. 33.

timely filed his complaint in this action, alleging that French Lick failed to promote him because of his age. French Lick moved for summary judgment on May 12, 2017.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### II. Discussion

Mr. Wilson's sole claim in this action is that he was denied a promotion to Table Games Shift Manager because of his age. Under the ADEA, an employer is prohibited from engaging in discrimination "because of [an] individual's age." 29 U.S.C. § 623(a)(1). To prevail on a claim under the ADEA, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

Mr. Wilson's ADEA claim invokes the Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Under *Ortiz*, regardless of

whether the court uses the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or some other framework to evaluate a plaintiff's employment discrimination claim, "the ultimate legal question 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (quoting *id.* at 765). Under this "simplified" approach, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765.

Because Mr. Wilson has framed his arguments within the *McDonnell Douglas* framework and that framework was not changed or otherwise undermined by *Ortiz*, we will first address his ADEA claim using that approach. We will then "assess cumulatively all the evidence presented by [Mr. Wilson] to determine whether it permits a reasonable factfinder to determine that [his failure to receive the promotion] was attributable to [his] age." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

### A. *McDonnell Douglas* Framework

Under the *McDonnell Douglas* rubric, a plaintiff "must first produce evidence of a *prima facie* case for failure to promote; if [he] does so, [the defendant] must then produce evidence of 'a legitimate nondiscriminatory reason for the employment action'; if the employer produces evidence of a legitimate reason, the plaintiff must then produce

7

evidence that the employer's 'stated reason is a pretext.'" *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 891-92 (7th Cir. 2016) (quoting *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015)). A *prima facie* case for failure to promote under the ADEA requires a plaintiff to establish that: (1) he is a member of a protected class; (2) he applied for and was qualified for the position sought; (3) he was rejected for that position; and (4) his employer instead promoted someone outside the protected class who was not better qualified for the position. *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003).

It is undisputed that Mr. Wilson has established the first and third prongs of a *prima facie* case as he was fifty-five years old at the time the promotion decision was made and he did not receive the promotion. But French Lick argues that Mr. Wilson cannot make out a *prima facie* case of age discrimination because he cannot show either that he was qualified for the position he sought, given that his promotion would have resulted in his supervising his wife in violation of the anti-nepotism policy, or that a less qualified, younger employee received the promotion, given that Mr. Whiting, the individual who was ultimately promoted, unlike Mr. Wilson, had no family member or significant other in the department who he would be responsible for supervising. Aside from the anti-nepotism policy, however, French Lick does not argue that Mr. Wilson was otherwise unqualified for the promotion or that he and Mr. Whiting were dissimilar in any other meaningful way. Thus, because French Lick's argument in this regard turns solely on the legitimacy of the anti-nepotism policy, a policy which Mr. Wilson maintains is being enforced not for legitimate reasons, but merely as a pretext for

discrimination, the analysis of these prongs of the *prima facie* case and the pretext inquiry merge here.

Pretext is "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). A plaintiff may establish pretext either by showing that "a discriminatory reason more likely motivated" the employer's decision or by showing that the employer's explanations for the decision are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009). "To show that the employer's non-discriminatory explanations are not credible, the plaintiff must point to evidence that the employer's stated reasons are not the real reasons for the employer's action, have no grounding in fact, or are insufficient to warrant the employer's decision." *Cox v. Coca-Cola*, 191 F. Supp. 3d 909, 920 (S.D. Ind. 2016) (citing *id.*; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)).

Mr. Wilson interprets the evidence to prove that age, rather than any anti-nepotism policy in effect at French Lick, was the real reason he failed to receive the promotion. He contends that he was qualified for the promotion, and that Mr. Whiting, a younger, similarly situated employee was instead awarded the position, despite having far less experience than Mr. Wilson and the other candidates. Mr. Wilson claims that the uncontroverted evidence establishes that French Lick's purported nondiscriminatory reason for his failure to receive the promotion, to wit, that his receiving the promotion would run afoul of the anti-nepotism policy, is merely a pretext for discrimination because the company did not enforce an anti-nepotism policy before the promotion

9

decision was made and has not consistently enforced the policy since that time either. We do not agree.

Even if, as Mr. Wilson contends, French Lick had never enforced an anti-nepotism policy before June 2015, when the promotion decision was made, this does not establish pretext. Mr. Wilson has failed to present any evidence to show that the decisionmaker, Mr. Miller, did not actually believe that it would violate company policy to promote any employee who would then be responsible for supervising a family member or significant other. *See Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001) ("[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers.") (citation and internal quotations omitted). Mr. Wilson points to the fact that, at his interview, in response to his question regarding whether it would be an issue that his wife was a dealer in the Table Games Department, Mr. Miller responded, "I don't see it as an issue. You guys may overlap only maybe an hour or two. I don't have a problem with it." Wilson Dep. at 70. However, Mr. Wilson's interview was conducted before Mr. Miller consulted with Ms. Tate to determine whether French Lick in fact had a policy that would prohibit such a situation. There is no evidence that, after he was informed by Ms. Tate that such a reporting relationship *would* violate company policy, Mr. Miller did not honestly believe that he was required to enforce that policy by disqualifying any candidate who would supervise a family member or significant other if promoted.

Nor is there any evidence that Ms. Tate, who informed Mr. Miller of French Lick's policy, harbored a discriminatory animus. Mr. Wilson does not contend—nor could he, in our view—that anti-nepotism polices serve no legitimate business purposes or are otherwise wrongful *per se*. In fact, courts have recognized that there are sound business reasons for instituting such policies. *E.g.*, *Haymer v. Nat'l R.R. Passenger Corp.*, No. 92 C 4286, 1994 WL 142880, at *5 (N.D. Ill. Apr. 18, 1994) ("[An anti-nepotism] policy could easily serve legitimate business purposes, both from employee morale and business security standpoints."). Thus, the fact that Ms. Tate, as a new member of management, sought to memorialize and uniformly enforce a policy to which there had not previously been strict adherence, does not itself evidence discrimination. *See id.* ("That a new manager would attempt to enforce a legitimate policy that was laxly applied in the past is not wrongful.").

Mr. Wilson rejoins, however, that he has presented evidence establishing that Ms. Tate has *not* uniformly enforced the anti-nepotism policy, citing three sets of French Lick employees whom he claims are currently in violation of the policy, namely, Sandy Lindsey and Darin Cummins (whom he was told are cousins), Neil Smith and his current fiancé, and Laura Tersiske and Christina Grimes (whom he was told are cousins or aunt and niece).[3] Even assuming that such testimony is not inadmissible hearsay, Mr. Wilson

---

[3] Mr. Wilson identified other individuals, including Jennifer Stevens, Jeff Wells, and Will Mullins, who may have at one point supervised family members. However, for each of these individuals, Mr. Wilson testified that he is either unsure whether they do in fact supervise a family member or has indicated that they have not supervised a family member since Ms. Tate began enforcing the anti-nepotism policy. Accordingly, these examples do not support Mr.

11

concedes that he does not know if Ms. Tate was aware of these employees' relationships when they were placed in these positions or thereafter. Wilson Dep. at 81-84. Accordingly, despite his contentions that French Lick is enforcing its anti-nepotism policy in a discriminatory fashion, Mr. Wilson is unable to identify any French Lick employee of whom Ms. Tate was or is aware who currently supervises a family member or significant other. Moreover, even if French Lick management were aware of and allowed certain employees to supervise individuals in violation of the anti-nepotism policy, Mr. Wilson has failed to present any evidence that suggests that it is doing so for the purpose of advancing or protecting younger employees, given the complete lack of evidence in the record regarding the ages of these employees or any other information sufficient to raise an inference of discrimination.

The only other evidence that Mr. Wilson points to in support of his pretext argument is the fact that neither he nor any of the other older candidates who were disqualified from consideration for the Table Games Shift Manager promotion "were provided with the option of moving their family member or significant other to a different department or shift to alleviate any nepotism concerns." Dkt. 41 at 16. Mr. Wilson characterizes this as evidence of pretext, given that French Lick made such allowances in other circumstances at the time Ms. Tate began enforcing the policy in order to correct situations in which employees were already supervising family members or significant others. However, there is no evidence that such an option was offered to any other

---

Wilson's contention that French Lick enforces its anti-nepotism policy in a discriminatory manner.

French Lick employee applying for a promotion or any individual who was applying for a position with the company for the first time. Thus, the fact that French Lick may have chosen to offer such an option solely to correct any then-current instances of violations of the anti-nepotism policy, but not when making future hiring and promotion decisions, does not establish pretext.

For these reasons, Mr. Wilson has failed to set forth sufficient facts showing a genuine issue for trial on his ADEA claim under the *McDonnell Douglas* framework.

### B. Cumulative Evidence Under *Ortiz*

Apart from the evidence discussed above, Mr. Wilson presents no other evidence to establish that his failure to receive the promotion was for any reason other than the impact of the anti-nepotism policy on his candidacy. Thus, stepping back and viewing the evidence as a whole does not alter the result reached applying the *McDonnell Douglas* rubric. Mr. Wilson does not dispute that, like every other candidate who did not receive the promotion, he would have been responsible for supervising a family member or significant other, namely, his wife, had he been promoted. Nor does he dispute that Mr. Whiting, the employee who actually received the promotion, had no such conflict. Although Mr. Wilson argues that Mr. Whiting was not *as qualified* as the other candidates for the promotion, including himself, he has not shown that Whiting was *unqualified* for the position.

Even if we were to assume that French Lick had never enforced an anti-nepotism policy before the promotion decision was made, Mr. Wilson has failed to establish that, once the company began enforcing its policy, it was enforced in a discriminatory fashion.

13

To the contrary, the evidence adduced shows that French Lick took steps to memorialize a written policy and to correct then-existing violations. Mr. Wilson contends that he knows or has been told of three French Lick employees who have supervised or are currently supervising family members or significant others since June 2015, when Ms. Tate began enforcing the anti-nepotism policy. However, he concedes that he does not know whether French Lick management was or is aware of those instances. Even if Ms. Tate was aware of and permitted certain exceptions to the policy, there is insufficient evidence in the record regarding the circumstances surrounding these exceptions, including the ages of the employees involved, to permit a reasonable jury to find that French Lick is allowing these exceptions for the purpose of advancing or protecting younger employees to the detriment of older ones.

Mr. Wilson's ADEA claim therefore cannot survive summary judgment because he has failed to present sufficient evidence that either establishes pretext under the *McDonnell Douglas* framework, or that, when viewed as a whole, otherwise raises an inference that his failure to receive the promotion was the result of age discrimination.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: _____12/29/2017_____

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to counsel of record via CM/ECF